IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO RANGEL and ) | | |
| PEDRO RANGEL JR., ) | | |
| ) | | |
| Plaintiffs, ) | | 10 C 02750 |
| ) | | |
| ) | | |
| v. ) | | Judge Lefkow |
| ) | | |
| CITY OF CHICAGO, CHICAGO POLICE ) | | |
| OFFICERS N. CHAPELLO, M. GONZALEZ ) | | |
| M. MATKER, C. POKOJOWCZYK, ) | | |
| J. WASHKEVICH, M. WALTON AND ) | | |
| R. LESLIE FIORITO, ) | | |
| | | |
| Defendants. | | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION FOR ENTRY OF A PROTECTIVE ORDER**

NOW COME Plaintiffs Pedro Rangel and Pedro Rangel, Jr., by and through their attorneys, Smith, Johnson & Antholt, LLC, and responds as follows to Defendants' Motion for Entry of a Protective Order.

**INTRODUCTION**

Plaintiffs object to two provisions of Defendants' Proposed Order. First, in section C(8)(b), Defendants have proposed burdensome, complicated, time consuming, and unnecessary procedures for handling information that is *not* confidential under their proposed order. Plaintiffs are concerned that the proposed procedures, which involve 30 day review periods and *in camera* review, will be used to delay the discovery process and frustrate Plaintiffs' ability to timely prosecute their case. Second, with proposed section A(6) Defendants ask this Court to find good cause to keep confidential the disciplinary records and complaint histories (Dkt. 30, ¶ 1). In

requesting that this information be held confidential, Defendants have misapplied the related statutes, the available legislative history, and the relevant case law.

Plaintiffs do not object to the entry of a protective order that is free from the defects described above. Plaintiffs agree that protecting information such as the personal identifiers of witnesses (including police officers), their families, and their financial information is appropriate. However, Plaintiffs strenuously object to the protective order as proposed by Defendants for failure to show good cause as required by FRCP 26(c).

### I.     Section C(8)(b) is Unnecessary and Unreasonable

Section C(8)(b) of Defendants' proposed protective order applies to cases of police misconduct in which the City has imposed discipline. These files are <u>not</u> confidential even under the terms of Defendants' Proposed Protective Order or Illinois law. Defendants' proposed Section C(8)(b) restricts use of non-confidential documents by requiring Plaintiffs to give Defendants a thirty (30) day review period before using the documents, or information therein, publicly. This includes court filings, depositions, etc.  Further, if Defendants object (which surely they will), the Court is <u>required </u>under the section to conduct an *in camera* review.

On a practical level, with an eye towards expediency, there are many problems with this proposed paragraph. First, this provision would submit any dispute to an in camera review by this Court. This could entail a tremendous expenditure of judicial resources for the review of documents that are not even confidential by the terms of Defendants' proposed order. The 30 day review period is likewise onerous in a case where roughly 100 days remain in non-expert fact discovery. The entire discovery period could elapse while Defendants drag their feet and prevent Plaintiffs from attaching non-confidential documents to motions and using them in furtherance of

his case. Also, large portions of depositions would have to be preemptively and improperly placed under seal.

Finally, Section C(8)(b) violates the spirit, if not the letter of the Local Rules regarding the filing of sealed documents as well as Seventh Circuit holdings. If Plaintiffs wished to file non-confidential documents that are the subject of Section C(8)(b) as exhibits to a motion, they would have to run through a gauntlet of requirements that at times contradict the Local Rules. Besides the added expense and time required for filing documents under seal, Local Rule 5.8 only allows such filings pursuant to court order. Any documents referred to in Section C(8)(b) are by their definition not confidential materials, so the proposed order would not provide the authority under the Local Rules for Plaintiffs to file them under seal. In any such instance, Plaintiffs would have to file one motion for clarification as to whether the documents could be filed under seal, and an in-camera review could follow. Only after such a determination, which may include response and reply briefs, could Plaintiff file any motion containing the non-privileged documents or information gleaned from them. This process would double the time needed to resolve simple discovery motions. Parties do not have carte blanche to file documents under seal or to seal depositions at will. "The determination of good cause cannot be elided by allowing the parties to seal whatever they want, for then the interest in publicity will go unprotected..." *Citizens First Nat'l Bank v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. Ill. 1999). A judge a may not rubber stamp a stipulation to seal the record. *In re Krynicki,* 983 F.2d 74 (7th Cir. 1992) (chambers opinion). Defendants have offered no defense for Section C(8)(b) in their motion for a protective order and have not demonstrated good cause for treating non confidential materials in this matter as restricted documents as required by Local Rules 26.2(b) and Federal Rule of Civil Procedure 26(C).

3

## II. Good Cause Does Not Exist to Protect CR Files and Disciplinary Records As Confidential

### A. Defendants Have Not Shown Good Cause to Keep Police Misconduct Files Secret

"In deciding whether there is good cause for a protective order, [this Court] must balance the interests involved: 'the harm to the party seeking the protective order and the importance of the disclosure to the public.'" *Doe v. Marsalis*, 202 F.R.D. 233, 237 (N.D. Ill. 2001) (*quoting Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997)). Here, the public policy of FOIA favors disclosure of *all* documents relating to the affairs of public officials, including allegations of police misconduct. Section 1 of FOIA states:

> Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it being conducted in the public interest.
>
> *The General Assembly hereby declares that it is the public policy of the State of Illinois that access by all persons to public records promotes the transparency and accountability of public bodies at all levels of government.* It is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act.

5 ILCS 140/1 (emphasis added).

The Chicago Police Department is a public institution and these CR files detail the City of Chicago's investigations of complaints about abuse of authority of public officers filed by citizens. By their nature, these files belong to the public.

Police officers are the primary face of civic authority to the much of the public, especially in low-income inner city communities. We entrust officers with the power to take our freedom, the power to arrest, the power to use force against us, and even the power to kill. More

4

importantly, we trust our police with these awesome powers in order to protect us and keep us safe. Granting police these powers also creates a special responsibility, trust, and accountability to the public to exercise those powers judiciously and within the bounds of the law. The consequence of abuse of police power can be catastrophic to individuals, families, and our justice system.

As this Court has explained, "[w]ithout such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will. With so much at stake defendants simply cannot be permitted to operate in secrecy." *Bond v. Utreras*, No. 04 C 2617, 2007 WL 2003085, at *3 (N.D. Ill. July 2, 2007) (reversed on other grounds); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.").

Judge Posner famously observed that "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens Bank*, 178 F.3d at 945-46. Not surprisingly, courts in this district have consistently considered the public interest a prominent factor in the good cause analysis in civil rights police misconduct suits. *See Padilla v. City of Chicago*, No. 06 C 5462, 2009 WL 2501393, at * (N.D. Ill. Aug. 14, 2009); *Coffie v. City of Chicago*, No. 05 C 6745, 2006 WL 1069132, at *3 (N.D. Ill. Apr. 21, 2006) ("The public certainly has a valid interest in knowing more about allegations of police misconduct."); *Bond v. Utreras; McGee v. City of Chicago*, No. 04 C 6352, 2005 WL 3215558, at *4 (N.D. Ill. June 23, 2005) ("This Court believes that the effectiveness of the Chicago Police Department's internal investigations is strengthened by public review of C.R. files produced in civil rights litigation."); *Mearday v. City of Chicago*, 196 F. Supp. 2d 700, 715 (N.D. Ill. 2002) ("This Court's views on

5

the need to publicly air, debate, review and eliminate police misconduct are well established."); *Marsalis*, 202 F.R.D. at 239 ("Court related documents are presumed to be matters within the public domain, especially when they concern matters of general concern to the workings of our democratic society. Police misconduct *certainly* meets this standard.") (emphasis added); *Doe v. White*, No. 00 C 0928, 2001 WL 649536, at *1 (N.D. Ill. June 8, 2001) ("[T]he police favor[s] the public's right to be informed of the conduct of public servants."); *Wiggins*, 173 F.R.D. at 230 ("[W]e conclude that public interest far outweighs any harm to the police officers and thus, there is no good cause to keep the documents confidential," and "[t]he public has a right to know whether allegations of police [misconduct] are appropriately investigated and resolved by the City of Chicago.")

To prove good cause, Defendants must first make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 453 U.S. 89, 102 n.16 (1981). The defendants must show that dissemination of the CR files "will result in a 'clearly defined and very serious injury.'" *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Keys, M.J.) (citation omitted). Some courts have characterized the defendant's burden to show good cause for a protective order as the "heavy burden of showing 'extraordinary circumstances' based on 'specific facts.'" *Alexander v. FBI*, 186 FRD 71, 75 (D.D.C. 1998); *Prozina Shipping Co. v. Thirty-Four Automobiles*, 179 F.R.D. 41, 48 (D. Mass 1988).The Defendants have failed meet this threshold requirement, and have attempted no such showing.

The presumption against a protective order is especially strong here because police officers, as public officials, have no right of privacy in the performance of their official duties. *Cassidy v. American Broadcasting Companies, Inc.*, 60 Ill.App.3d 831, 839 (1978) ("[T]he

conduct of a policeman on duty is legitimately and necessarily an area upon which public interest may and should be focused."); *In re: A Witness Before the Special Grand Jury*, 288 F.3d 289, 294 (7th Cir. 2002) ("Public officials are not the same as private citizens precisely because the exercise the power of the state."). The Defendants will have no legitimate privacy interests, since all personal information will be redacted from the Complaint Register files.

Balancing the importance of disclosure to the public, any counter-argument Defendants might make concerning an amorphous potential harm will ultimately fail. "[T]he fact that the C.R. files contain allegations, and maybe even false ones, does not provide a legitimate basis for keeping these documents confidential." *McGee*, 2005 WL 3215558, at *3. In explaining that the party seeking protection will not be harmed, Judge Castillo remarked:

> [L]awsuits are filed against police officers every day and are a matter of public record. The allegations contained in these lawsuits may or may not be true. The general public is sophisticated enough to understand that a mere allegation of police torture, just like a lawsuit, does not constitute actual proof of misconduct. While it is true that the requested information concerns the internal investigative processes of the police department, there is an important public interest at stake-the health and welfare of the general public and the integrity of the police department. The public has a right to know how matters concerning their daily protection are being investigated and handled. If it were not for this type of public information, allegations of police torture might go unnoticed-seriously jeopardizing the safety of the community at large. In essence, this Court concludes that the allegations of police misconduct in the [C.R. files] before the Court must receive public exposure in order to insure that the significant public interest is served.

*Wiggins*, 173 F.R.D. at 230.

### B. IAD, IPRA, and OPS Do Not Make Adjudications

Defendants argue that C.R. files are not publicly available under the 2010 FOIA statute. Investigations conducted by the Internal Affairs Division (IAD), the Independent Police Review Authority (IPRA), and the Office of Professional Standards (OPS), however, are not adjudications. Therefore, the statutory exception to the public records law, 5 ILCS 140/7(1)(n)

(exempting "[r]ecords relating to a public body's adjudication of employee grievances or disciplinary cases" from FOIA disclosure), does not apply to the CR investigation files that Defendants seek to hold confidential in Section A(6) of their proposed order. This is not a surprise to Defendants. As their own documentation explains, "The Independent Police Review Authority (IPRA), the Police Department, and the Police Board have different roles. The responsibility to receive complaints rests with IPRA. Depending on the nature of the allegations, either IPRA or the Police Department will investigate the complaint. The Police Board's role is to [adjudicate] those disciplinary matters that are filed with the Board."[1] In addition, the Police Board's Rule of Procedure states: "Proceedings against an employee shall be commenced by the filing of written charges with the Police Board by the Superintendent of Police."[2] All adjudicatory responsibility lies with the superintendent and the Police Board. The role of IPRA, OPS, and IAD are purely investigatory.

In a recent ruling denying a motion for reconsideration after striking down a provision identical to A(6) in Defendants' proposed order, Judge Schenkier made a compelling analogy between the purely investigatory function of the EEOC in employment disputes and IPRA/OPS investigations that end without adjudication. Exhibit A, Motion Hearing Transcript.

> Let's say that somebody is fired … and they have a claim that they wish to file that [their] termination violates Title VII. As a prerequisite to going into federal court, you have to file a charge with the EEOC. The EEOC does not adjudicate charges. The EEOC will investigate, will often try to mediate. And at the end of an EEOC process, whether it is terminated by the issuance of a right to sue letter or a finding of substantial evidence or a finding of no substantial evidence, the EEOC mission is over. *That is not an adjudication.* The person may then go to federal court, may not go to federal court…. If … the matter never progresses

---

[1] The Chicago Police Board's publication, "Allegations of Police Misconduct: A Guide to the Complaint and Disciplinary Process" (July 2010) is available at http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/AllegMiscond201007.pdf.

[2] The Chicago Police Board's Rules of Procedures (November 2009) is available at http://www.cityofchicago.org/content/dam/city/depts/cpb/PoliceDiscipline/RulesofProcedure20091119.pdf.

>beyond that EEOC investigative phase, I would be hard pressed to conclude that what happened at the EEOC was related to an adjudication because there never was an adjudication.

Exhibit A, pp. 4-5. (Emphasis added).

Likewise, IPRA, OPS, and the IAD do not have the authority or power to issue or adjudicate discipline to Chicago police officers. Like the EEOC they can issue a recommendation based on their findings. However, only the Police Board or the Superintendent of Police can adjudicate the matter and impose any discipline. The result of the internal investigation does not compel any action from either the Police Board or the Superintendent. In many cases, investigation recommendations are summarily rejected without any further explanation or review. If an investigation ends without Police Board involvement, the IPRA investigation cannot be related to an adjudication because no adjudication occurred.

  **C.**  **820 ILCS 40/0.01 of the Illinois Personnel Records Review Act Does Not Support Defendants' Proposed Order**

In their proposed protective order, section A(6), Defendants cite 820 ILCS 40/0.01, the Illinois Personnel Records Review Act, to support their proposed standard. However, Defendants' position is unsupported by 820 ILCS 40/0.01. The Act only requires employers to submit written notice to their employees before releasing "a disciplinary report, letter of reprimand, or other disciplinary action to a third party." 820 ILCS 40/7. Thus, Defendants incorrectly rely on this Act as it clearly "does not prohibit the disclosure of the disputed documents; rather it merely prescribes the procedures the [Chicago Police Department], as the defendant officers' employer, must follow before disclosing them." *Bond v. Utreras et al.*, 2007 WL 2003085, at *4 (N.D. Ill. 2007); *see Bell v. City of Chicago*, No. 09 C 0754, 2010 WL 753297, at * (N.D. Ill. Feb. 26, 2010) (rejecting the defendant's argument that the Act could serve as the basis for a good cause showing).

### D. The 2010 Amendments to the Illinois FOIA Statute do not Supersede *Gekas v. Williamson*

*Gekas v. Williamson*, 912 N.E. 2d 347 (Ill. App. Ct. 2009), made clear that disciplinary records were not exempt under FOIA, explaining:

> Unlike a performance evaluation, the [police department]'s records are not generated for [the officer]'s personal use, and they do not concern his personal affairs. What he does in his capacity as a [police officer] is not his private business. Whether he . . . committed misconduct during an investigation or arrest is not his private business. Internal-affairs files that scrutinize what a police officer did by the authority of his or her badge do not have the personal connotations of an employment application, a tax form, or a request for medical leave. Not every scrap of paper that enters a personnel file necessarily is personal information.

*Id.* at 356. Recent decisions from this district have followed *Gekas's* interpretation and found that police disciplinary records—including C.R. files—are to be publicly disclosed in §1983 civil rights cases. *See Parra v. City of Chicago*, No. 09 C 4067 (N.D. Ill. Apr. 14, 2010); *Goldhamer v. Nagode*, No. 07 C 5286, 2009 WL 3680201, at *2 (N.D. Ill. Nov. 2, 2009); *Padilla v. City of Chicago*, No. 06 C 5462, 2009 WL 2501393, at *1 (N.D. Ill. Aug. 14, 2009).

Furthermore, the recent amendments to section 7 of FOIA were not passed in response to the *Gekas* decision nor do they overrule or undermine the rationale behind it. First, a timeline of the amendments, which began as Senate Bill 189, shows that the bill was first introduced in February 2009. The *Gekas* decision was announced on July 20th 2009. Almost a month later, on August 17, 2009, the actual amendments to FOIA were passed in Public Act 96-542, becoming effective January 1, 2010. Given the overall changes to FOIA exemptions that this bill created and, above all else, the fact that they were introduced into legislation prior to *Gekas*, if the legislature wished to overrule *Gekas*, it would have done so in a clear and readily apparent manner. As Judge Schenkier has explained,

> That bill [2010 FOIA amendments] was first introduced in February of 2009. And I think more important for our purposes, the very significant amendments to the exemptions under FOIA, under 140/7(1), those were actually first marked up in the bill in May of 2009. So we're talking about these proposed amendments actually were in the bill prior to Gekas. And given the overall very extensive changes in the Freedom of Information Act exemptions that this bill created, and given that they were introduced into the legislation prior to Gekas, it is difficult for me to ascribe to the legislature a motive in the legislation of overruling Gekas.

Exhibit A, pp. 6-7.

### E. The 2010 Amendments to the Illinois FOIA Statute Place the Burden of Non-Disclosure on the Government

In 2010, the Illinois legislature codified the presumption that public records are open to the public. *See* 5 ILCS 140/1.2 ("All records in the custody or possession of a public body are presumed to be open to inspection or copying."). In addition, prior to the 2010 amendments, FOIA had placed the burden of overcoming an exemption on the person or party *seeking* disclosure of the documents. The 2010 amendments constituted a complete reversal. The law now reads that "[a]ny public body that asserts that a record is exempt from disclosure has the burden of providing by clear and convincing evidence that it is exempt." *See* 5 ILCS 140/1.2.

When interpreting a statute, a court's "sole objective is to ascertain and give effect to the legislature's intent." *Gekas*, 912 N.E.2d at 353. A court would be hard-pressed to find more conclusive evidence of legislative intent than examining the text of the statute and giving words their plain and ordinary meaning. *Id.* By creating a presumption of openness and shifting the initial burden to the party wishing to keep such information private, the two provisions just mentioned are clear evidence of the legislature's desire to make FOIA more pro-disclosure. Here, in their motion, Defendants have offered no showing, much less by "clear and convincing evidence" that officer complaint register files should be held confidential.

### F. State Law is Not Dispositive in a Federal Rule 26(c) Good Cause Analysis

The Defendants' emphasis on the state of Illinois law is misplaced, because federal law, not state law, governs discovery in federal civil actions. *Memorial Hosp. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir. 1981); *McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) ("State-law privileges are not 'legally applicable' in federal-question cases."). *See also Lepianka v. Village of Franklin Park*, No. 03 C 2991, 2004 WL 626830, at *2 (N.D. Ill. Mar. 26, 2004) (Nolan, J.) ("The Illinois FOIA governs disclosure to the public in general and is not dispositive of disclosure in response to discovery requests in litigation."). A federal court may, as a matter of comity, exercise its discretion to consider the expectation of privacy created, or precluded,[3] by state law as one of several factors in the Rule 26(c) balance.

Irrespective of whether Illinois may one day recognize a privacy interest in official police misconduct files, the Court must determine whether Defendants have met their burden of showing good cause to shield this information from public scrutiny under Rule 26(c) of the Federal Rules of Civil Procedure.

### G. The Reference To The 7th Circuit Decision in *Bond v. Utreras* Should be Removed from the Protective Order

Following the definition of Confidential Matter in Section A(6) of the proposed protective order, Defendants include a provision referencing a pending decision by the Seventh Circuit in the case of *Bond v. Utreras.* The Seventh Circuit has already decided the *Bond* case. Its decision related to the issue of standing and did not address this Court's holding in *Bond* that there is no good cause to restrict C.R. files as confidential matter. Therefore this reference to the *Bond* decision should be eliminated.

---

[3] Indeed, it is difficult to imagine how the defendants could show good cause to shield *public* records of local government under Rule 26(c).

## CONCLUSION

The disputed sections of Defendants' proposed protective order, discussed above, are not appropriate. Defendants' protective order, as proposed, will unnecessarily complicate this legislation and tax scarce judicial resources. Defendants also attempt to brush the public interest off the table; an interest which *Gekas* and the 2010 FOIA amendments seek to protect. Instead of serving the goal of transparency and ensuring good governance, Defendants' proposed order serves the narrow self-interest of a public agency that would like to hide its process and work product as far as possible from the public view. Defendants' position stands in defiance of the 2010 FOIA Amendments, the relevant FOIA statutes, the Illinois Personnel Records Review Act, the Local Rules, and relevant state and federal case law. These make clear that Defendants' disciplinary records and CR files are public records and should be subject to public disclosure and not the protective order proposed by Defendants.

WHEREFORE, Plaintiffs request that this Honorable Court deny entry of Defendants' proposed protective order or, in the alternative, modify such order to include only private information including social security numbers, home addresses, and familial information.

Respectfully submitted,

/s/ James M. Baranyk

Amanda Antholt
Christopher Smith
Robert Johnson
James Baranyk
Smith, Johnson & Antholt, LLC
112 S. Sangamon Street, 3rd Floor
Chicago, IL 60607
(312) 432-0400