IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PEDRO RANGEL, and <br> PEDRO RANGEL, JR., | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | No. 10 C 2750 |
| v. | ) <br> ) | Judge Lefkow |
| CITY OF CHICAGO, CHICAGO POLICE <br> OFFICERS N. CHAPELLO, M. GONZALEZ, <br> M. MATKER, C. POKOJOWCZYK, <br> J. WASHKEVICH, M. WALTON and <br> R. LESLIE FIORITO, | ) <br> ) <br> ) <br> ) <br> ) <br> ) | Magistrate Judge Nolan <br><br> Jury Demand |
| Defendants. | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR
## MOTION FOR A PROTECTIVE ORDER

Individual Defendants Nicholas Chapello, Michael Gonzalez, Mark Matker, Christine Pokojowczyk, Jonathon Washkevich, Matthew Walton and Ross Leslie by one of their attorneys, Mary McDonald, Assistant Corporation Counsel for the City of Chicago, and Defendant City of Chicago, by its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, submit the following memorandum in reply to Defendants' motion for a protective order.

### INTRODUCTION

Plaintiff objects to two provisions of Defendants' proposed protective order. First, plaintiff argues Defendants have proposed burdensome, complicated and time consuming procedures in Section C(8)(b) of the proposed protective order for handling the release, to third parties of sustained CR's. Second, plaintiff argues with proposed section A(6) of the protective order Defendants have failed to show good cause and, therefore, the CRs and complaint histories in this

1

case should not be subject to protective order. (Plaintiff's Response, pp. 1, ¶ 2). For the reasons set forth below, plaintiff's arguments are insufficient as a matter of fact and law and Plaintiff's objections should be overruled and Defendants' proposed protective order entered, the exception being Defendants have no objection to deleting the reference to *Bond v. Utreras* in the protective order.

## DISCUSSION

### I. SECTION C(8)(B) RELATING TO SUSTAINED CRs IS NECESSARY AND REASONABLE.

Plaintiff's first argument contends that Section C(8)(b) of Defendants' proposed protective order is unnecessary and unreasonable. (Plaintiff's Response, pp. 2-3). Defendants disagree. Section C(8)(b) of the proposed protective order is necessary and reasonable to the public release of sustained CR's because it takes into consideration the practicalities of releasing such information to the public. Section C(8)(b) simply requires plaintiff to give Defendants a copy of the proposed documents to be released 30 days in advance of such release.

This 30 day requirement provides Defendants with the opportunity to review whether or not the proposed documents truly qualify for public release and, if so, that the proper redactions have been made to the sustained CR prior to its release. Witnesses to CRs often do not want their information released to the public and often times sensitive private information such as health, family histories, criminal histories, etc. independently recognized as protected information are contained within these CR files relating to the complainant, police officers and witnesses.

Section C(8)(b) also takes into consideration the appeal process police officers are entitled to once there is a recommendation to sustain a CR against a police officer. This 30 days period also

gives Defendants the opportunity to make sure that all final appeals of the sustained CR have been completed and the proper notifications given to persons affected by this release.

Moreover, section C(8)(b) gives Defendants an opportunity to explain to the Court why a sustained CR may be still deemed a confidential document and why "good cause" may still exist to hold it confidential under the terms of the proposed protective order. Plaintiff's argument that section C(8)(b) would submit *any* dispute to an *in camera* review is simply not true. (Plaintiff's Response, p. 3, ¶ 1). Section C(8)(b) is specific to sustained CR's only. Section C(8)(b) would not submit any and all disputes to an *in camera* review by this Court.

Plaintiff's argument that this Court would incur a tremendous expenditure of judicial resources reviewing sustained CR's, and the entire discovery period could elapse reviewing these sustained CR's (Plaintiff's Response, p. 3, ¶ 1), is also not true. First, more than likely an *in camera* review by the Court may never be necessary. Plaintiff offers this argument because he knows some judges do not like to do *in camera* reviews. Second, an *in camera review* may never be necessary in this lawsuit because there may never be a dispute over the release of a sustained CR. Third, in the unlikely event an *in camera* review is necessary, the *in camera* review of a CR file can be performed in less time than it takes to review briefs on the issue. In fact, Local Rule 26.2 provides for the use of such protective orders. *See* N.D. Ill. R 26.2.

Even if there were a discovery dispute involving the public release of a sustained CR, which there is not at this point, discovery would not come to a standstill while this issue is being resolved. There is absolutely no reason why discovery would be stalled while the issue of the public release of a sustained CR is pending before the Court.

During discovery Plaintiff will be issued copies of the defendant officers' CR files pursuant to the terms of the protective order. Plaintiff as a matter of routine reviews these CR files and asks questions of Defendants regarding these CR files. Protective orders such as the one proposed by Defendants allows for the efficient production of sensitive information such as CR files and medical information. There is no reason why discovery would elapse because the public release of a sustained CR issue is being reviewed by the parties or the Court.

Finally, Section C(8)(b) of Defendants' proposed protective order does not violate Local Rule 5.8. Section C(8)(b) does **not** require sustained CRs be filed under seal as part of the *in camera* review process. It is a possible alternative. The CR file, or portions of a pleading referring to it, can simply be referenced as a restricted document on the public docket when used in conjunction with a motion and can be hand delivered to chambers for an *in camera* review. This has been employed numerous times in various lawsuits and is a non-onerous process.

### II. GOOD CAUSE DOES EXIST TO PROTECT CR FILES AND DISCIPLINARY RECORDS AS CONFIDENTIAL

Plaintiff's second argument alleges Defendants have failed to establish that good cause exists to hold CR files and disciplinary records confidential. Plaintiff sets forth seven sub-arguments to persuade the Court that good cause is absent. (Plaintiff's Response, pp. 4-12). Each of these arguments will be addressed in turn.

### A. Defendants Have Shown Good Cause to Keep Police Misconduct Files Confidential.

At the outset, Defendants are not moving to "non-disclose" anything to plaintiffs. Plaintiff simply argues with no legal support that the Chicago Police Department is a public institution and

that those CR files by their nature, therefore, belong to the public and should be automatically released to the public. (Plaintiff's Response, pp. 4-7). Again, Defendants simply seek a protective order to hold confidential non-sustained, unfounded or exonerated CRs. Defendants have established good cause for entry of such a proposed protective order.

Many of the complaints made against police officers lack merit, and such disclosure invades the police officers' privacy rights and reputation, makes officers targets of baseless lawsuits, and undermines the trust in the police. The only conceivable interest plaintiff has in disseminating to the public unfiled discovery is to either taint the jury pool, use the materials for other or future lawsuits, or to promote plaintiff's attorneys through media coverage.

As Judge Der-Yeghiayan pointed out in *Bell v. City of Chicago,* No. 09 C 4537 Document # 45, p.2 (Judge Der-Yeghiayan, N.D. Ill) [t]he Supreme Court has explained that the protection of a party's privacy interests, while not expressly set forth in Rule 26(C), is "implicit in the broad purpose and language of the rule. Judge Der-Yeghiayan relied on the precedent set forth in *O'Malley v. Village of Oak Brook,* 2008 WL 345607 (N.D.Ill 2008)(*quoting Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 35 n.21, 104 S.Ct. 2199 (1984)).

Judge Der-Yeghiyan further explained the following:

> The court in *O'Malley* discussed in detail why there is good cause for the entry of a protective order with respect to disciplinary records of police officers. *Id.* Among other bases for good cause, the court stated that disciplinary investigations are just that: investigations into charges of misconduct that may or may not have merit. It may be the case that the public would not treat the mere fact of investigation as proof of misconduct." *Id.* On the other hand, the court found, "disclosure of the fact of disciplinary investigations may taint the reputation of a police officer if member of the public assume that where there is smoke, there is fire." *Id.*

*Bell v. City of Chicago,* No. 09 C 4537 Document # 45, p.2 (Judge Der-Yeghiayan, N.D. Ill).

Numerous recent courts have found good cause for maintaining CRs as confidential under a protective order. *See*, *Bradley v. Parker et al.,* No. 09 C 4538 (N.D. Ill. Feb 12, 2010), *Turner and Morgan v. Parker, et al.,* No. 09 C 1177, *Bell v. City of Chicago,* No. 09 C 0754, *Dean v. City et al,* No. 09 C 1190 (N.D. Ill Oct. 28, 2009) (Kennelly, J), *Ireland v. City et al.,* No. 09 C 2959 (N.D. Ill. Jan 4, 2010) (Pallmeyer, J.), and *Alva v. City, et al.,* No. 08 C 6261 (N.D. April 16, 2010)(Dow, J.).

Many public agencies hold confidential complaints regarding employees' alleged conduct until a comprehensive investigation has taken place and a conclusion reached. Agencies such as the Attorney Registration and Disciplinary Commission, the Judicial Inquiry Board, the Inspector General, Senate Committees and others investigate complaints of public servants and hold such information confidential until sustained. If not sustained these files do not become available to the public. The reason for such nondisclosure is obvious. Disciplinary investigations are just that: investigations into alleged charges that may or may not have merit. The damage to the reputation of the police officer, the judge, an attorney, or another accused is a matter of irreversible harm.

With respect to police officers in particular many CR complainants refuse to sign the required affidavit to support their allegations. Some of the CRs are based upon unfounded allegations. Also, complainants and witnesses, when they make statements and provide documentation concerning medical information, do so under the condition that the investigation is confidential. The release of those CRs would be at the expense of all individuals whose names appear within it.

Finally, good cause has been established by Defendants because the newly-amended FOIA's list of exemptions now includes an express exemption protecting disciplinary records from public disclosure until they are sustained. Good cause has been shown by Defendants with regard to CR

files in general because some of the complaints made against police officers are meritless, such disclosure would invade the police officers privacy rights, make police officers targets of baseless lawsuits, and undermine the trust in the police. Section 7(1)(n) of FOIA *per se* exempts from disclosure:

> (n) Records relating to a public body's adjudication of employee grievance or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which disciplined is imposed.

5 ILCS 140/7(1)(n) (West 2010).

In the situation of a sustained CR, Section C(8)(b) simply ensures the parties and the Court that all proper redactions are made of the protected information contained in a CR file, and that discipline is in fact a final outcome of the case where the appeal of the sustained finding is, in fact, final and appeal proceedings are in fact final.

### B. IAD, IPRA, and OPS Do Make Adjudications.

Plaintiff argues that investigations conducted by Internal Affairs ("IAD"), the Independent Police Review Authority ("IPRA") and the Office of Professional Standards ("OPS") are not adjudications under the 2010 FOIA statute. Therefore, according to Plaintiffs' interpretation, the statutory exception to the public records law, 5 ILCS 140/7(1)(n), ("Section 7(1)(n)") does not apply to CR investigations. (Plaintiff's Response, p. 4, ¶ 1). Defendants disagree.

The simple fact is that IPRA and IAD investigate complaints of misconduct against police officers and make recommendations to the superintendent regarding appropriate disciplinary action. These agencies all investigate complaints of alleged misconduct by police officers. When allegations of misconduct are made known to IAD or IPRA, investigators from these divisions open an investigation. These investigations involve contacting the complainant, contacting witnesses to

obtain statements, collecting evidence, questioning the accused usually with counsel present, and questioning other police department officials who may have knowledge of the alleged misconduct. IAD and IPRA classify the results into the following categories: sustained, not sustained, unfounded or exonerated. Finally, based on its investigations, recommendations regarding discipline are made to supervisors, including the Superintendent of Police. The Police Board can then take action after the Superintendent of police files charges against a police officer. The decision of the Police Board is related to and dependent upon the determinations and finding made by IAD or IPRA.

The crux of Plaintiff's argument is that because IPRA does not impose discipline, but only make findings and recommendations, CR files are not "adjudications." Plaintiff's self-serving definition of "adjudication" is incorrect. The plain and ordinary meaning of "adjudication," according to Webster's New Collegiate Dictionary, is "1: the act or process of adjudicating; 2a: a judicial decision or sentence, b: a decree in bankruptcy." *Webster's New Collegiate Dictionary*, p. 15 (1981). "Adjudicate" is defined as "to settle judicially" or "to act as judge." *Id*. To "judge" is defined as "1: to form an opinion about through careful weighing of evidence and testing of premises." *Id.*, at 620. IPRA describes its function through the CR investigation process, in part, as:

> An investigator is assigned to conduct a comprehensive investigation of each complaint. It is his or her responsibility to contact the complainant(s) and witness(es) to obtain any verbal and/or written statements. The investigator will obtain any relevant evidence, including, but not limited to police and medical reports, photographs, videotapes, audiotapes, and forensic evidence. The investigator will also question the accused member and any Police Department member who may have knowledge of the alleged misconduct.

*See*, http://www.iprachicago.org/process.html. One would be hard-pressed to argue that IPRA's function in investigating CRs does not fall directly within the definition of "adjudication."

8

Alternatively, assuming that Plaintiff's definition of "adjudication" is correct, CR files are nevertheless exempt under Section 7(1)(n). Section 7(1)(n) does not only exempt "adjudications," but all records *related to* such adjudications. 5 ILCS 140/7(1)(n). Plaintiff ignores the fact that the Police Department and/or Police Board rely directly on the investigation, findings and recommendations contained in CRs when determining discipline. Plaintiff's logic that the records created by the Police Department or Police Board are protected, while the CR files relied upon are not, is flawed and would be an "absurdity, inconvenience, [and] injustice." *See Mich. Ave. Nat'l Bank v. County of Cook,* 191 Ill.2d 493, 503-04 (2000).

Judge Dow addressed this very same issue in April of this year. *See, Alva v. City of Chicago,* No. 08 C 6261 (N.D. Ill., April 16, 2010, Minute Order, Document # 80). Judge Dow concluded CR's are adjudications and the statutory exception under 5 ILCS 140/7(1)(n) applied, stating as follows:

> Plaintiff argues that reliance upon the amendment to exempt CRs from disclosure is fatally flawed because CRs are not "adjudications." However, the amendment does not merely exempt "adjudications," rather, it expressly references records "relating to" adjudications. Mindful of precedent that instructs that "relating to" is a liberal standard (see *Kopchar v. City of Chi.,* 395 Ill. App. 3d 762, 765 (Ill. App. Ct. 2009) (discussing FOIA); see also *Pierson v. Dean,* 742 F.2d 334, n.2, 338 (7th Cir. 1984)(discussing "relating to" in an arbitration clause)), the Court looks to the procedures employed in disciplinary actions against police officers.
>
> First the Independent Police Review Authority (IPRA) collects complaints about police officers and investigates the complaints. After contacting the complainant and any witnesses to obtain statement, the investigator collects the relevant evidence and also questions the accused office and any police department official who may have knowledge of the alleged misconduct. Next, the IPRA classifies the result into the following categories: sustained, not sustained, unfounded or exonerated. Finally, based on its investigation, the IPRA make recommendations to the Superintendent of Police. If the

> IPRA and the Superintendent of Police disagree as to the correct disciplinary steps, the Police Review Board (PRB) decided.
>
> Plaintiff posits that complaint register files relates to the investigation of a complaint, and that the adjudication of the complaint occurs after IPRA has issued its finding. See also *Macias v. City of Chi,* No. 09 C 1240 * 2 (N.D.Ill. Mar. 10, 2010). In other words, according to Plaintiff, IPRA is an investigatory, not adjudicatory, body because it does not settle disciplinary issues; rather, it simply make recommendations and then either the Police Superintendent or the PBR makes the final decision.
>
> This Court respectfully disagrees. See also *Bell v. City of Chicago,* 2010 WL 753297, at *2 (N.D. Ill. Feb. 26, 2010). Although IPRA's investigations does not involve oaths, cross-examination, or confrontations, the initial investigation by IPRA triggers the adjudication. (Oral Arg. Tr. Mar. 3, 2010, 6:7-9, 9: 3-5). Without a CR, the adjudication of an employee disciplinary case would not take place–the adjudication follows from the investigation. Indeed, the PRB relies heavily on IPRA's investigations (Tr. 9: 23-24), demonstrating a close connection between the Crs and the adjudication-and at least a sufficiently close connection to satisfy the "related to" language in the amendment. Therefore, it is not that the Crs ultimately may be relevant in a later adjudication, but that the Crs comprise the bulk of *what is relevant* to the adjudication. But see *Macias,* No. 09 C 1240 *2 (N.D. Ill. Mar. 10, 2010).

*Alva v. City of Chicago,* 08 C 6261 (N.D. Ill., April 16, 2010, Minute Order Document # 80).

Magistrate Judge Schenkier's ruling in *Vasquez v. Parker*, et. al, 09 C 4529 (Plaintiff's Exhibit 1 to Response, Court Transcript of May 12, 2010, pp. 4-5) is not binding and fails to take into consideration the role of the Police Board and the fact that these agencies conduct investigations and makes decisions (i.e. recommendations) which ultimately trigger the adjudication. The EEOC's role is different from than roles of IAD and IPRA. Magistrate Judge Schenkier never consider the "related to" language in the amendments' to FOIA. Much of his discussion is purely dicta, and his limited ruling is not binding on this Court. In addition, Magistrate Judge Schenkier ultimately agreed there was good cause to enter a protective order for many of the CRs protected in Vasquez. (*Vasquez v. Parker*, et. al, 09 C 4529, Dckt #67). Therefore, based upon

the relevant case law investigations by IAD, IPRA and OPS can only be considered to be adjudications for purposes of the statutory exception of 5 ILCS 140/7(1)(n).

### C. 820 ILCS 40/0.01 Of the Illinois Personnel Record Review Act Does Support Defendant's Proposed Order.

Plaintiff's next argument asserts that Defendants incorrectly rely on the Personnel Record Review Act as it clearly does not prohibit the disclosure of the disputed documents; rather it merely prescribes the procedures the [Chicago Police Department], as the defendant officers' employer, must follow before disclosing them." **(Plaintiff's Response, pp. 9, ¶ 2).** Plaintiff relies on *Bond v. Utreras* et al., No. 04 C 2617. 2007 WL 2003085, at *4 (N.D. Ill. July 2, 2007) and *Bell v. City of Chicago,* No. 09 C 0754, 2010 WL 753297 (N.D. Ill. Feb 26, 2010) to support this argument. This Act in general holds confidential employment records of employees. 820 ILCS 40/0.01. The Illinois Personnel Record Review Act provides that employment records of employees are confidential and provides for penalties for improper disclosure of employment records. 820 ILCS 40/7 and 40/12. Plaintiff's reliance on *Bond v. Utreras et al.*, 2007 WL 2003085, at *4 (N.D. Ill. 2007) and *Bell v. City of Chicago*, 09 C 0754, 2010 WL 753297, at *5 is misplaced.

The Court in *Bell v. City of Chicago,* No. 09 C 0754, 2010 WL 753297, (N.D. Ill. July 2, 2007) never discusses the Illinois Personnel Records Review Act whatsoever. Moreover, in *Bell,* Judge Darrah did in fact conclude that FOIA now includes an express exemption protecting certain disciplinary records from public disclosure. *See,* No. 09 C 0754, 2010 WL 753297, at *2, N.D. Ill. July 2, 2007). In his analysis of the issue, Judge Darrah discussed the prior decision by Judge Dow t in *Alva v. City of Chicago,* No. 08 C 6261 (N.D. Ill. Oct. 8, 2009) where the Court originally concluded FOIA does not establish good cause for an order protecting CRs from disclosure. *Id.* at

11

*2. However, Judge Darrah's analysis did not take into consideration the fact that Judge Dow reconsidered his ruling of October 8, 2009, on April 16, 2010. Further, Judge Darrah himself concluded, that a protective order should be entered to hold certain CR files confidential in *Bell v. City of Chicago,* No. 09 C 0754, 2010 WL 753297 at *3 (N.D. Ill. Feb. 26, 2010).

In addition, the Seventh Circuit in *Bond* recognized the efficiency of protective orders and concluded that it did not interfere with Kalven's ability to try and obtain them. *Bond v. Utreras,* 585 F.3d 1061, 1070 (7th Cir. 2009). Therefore, it can only be concluded that the Illinois Personnel Record Review Act does support Defendants' proposed protective order holding certain employment records including CRs confidential.

### D. The 2010 Amendments to the Illinois FOIA Statute supersede *Gekas v. Williamson.*

Plaintiff's next argument contends that the recent amendments to FOIA did not supersede *Gekas v. Williamson.* (Plaintiff's Response, pp. 10-11). Despite the clear and unambiguous language of 2010 FOIA, Plaintiff continues to argue, pursuant to the *Gekas* holding, that CR files and other disciplinary records are not exempt. (*Id.*). Again, plaintiff's argument is not supported by the law. 2010 FOIA was signed into law only following the Fourth District's holding in *Gekas,* thus the 2010 FOIA overrules the *Gekas* holding where it conflicts with 2010 FOIA.

On April 16, 2010, Judge Dow, after analyzing recent amendments to FOIA, 5 ILCS 140/1.2 (West 2010), concluded the January 1, 2010 amendments superseded *Gekas v. Williamson* and that *Gekas* no longer reflects the current state of the law. *See Alva v. City of Chicago,* No. 08 C 6261 (N.D. Ill., April 16, 2010, Minute Order Document # 80). Judge Dow correctly analyzed the sweeping changes made through the 2010 FOIA amendment which chose to create an entirely

separate exemption for disciplinary documents. *See* 5 ILCS 140/7(1)(n) ("Section 7(1)(n)"). Judge Dow correctly relied on this exemption in reaching its decision.

Further, on November 10, 2009, the Seventh Circuit issued its opinion in *Bond v. Utreras,* 585 F.3d 1061 (7th Cir. 2009). In *Bond*, the Seventh Circuit vacated the underlying district court's order that would have lifted a protective order that had been entered in that case and allowed an intervenor access to materials marked confidential during litigation, specifically police-officer complaint registers. In its discussion in *Bond*, the Seventh Circuit addressed *Gekas, Copley,* and *Lieber* and noted that *Gekas* conflicts with *Copley* and the Illinois Supreme Court's decision in *Lieber*. The Seventh Circuit's acknowledgment of a conflict between *Gekas* and the Illinois Supreme Court's decision in *Lieber* (as well as the appellate court's decision in *Copley*) support Defendants' position that this Court need not and should not rely upon *Gekas* in determining whether Defendants' proposed protective order should be entered.

E. **Defendants Have Satisfied Their Burden For Purposes of Their Motion For a Protective Order.**

Plaintiff claims that Defendants have offered no showing, much less by "clear and convincing evidence" that officer complaint register files should be held confidential. (Plaintiff's Response, p. 11). Defendants disagree. At the outset, the motion pending before the Court involves Defendants' proposed protective order, not a request under FOIA. Plaintiff's argument that Defendants must prove by clear and convincing evidence that an objectively reasonable person would find the disclosure of CRs an invasion of privacy is incorrect. A withholding entity only has this burden of proof when withholding records not specifically exempt under FOIA. *See* 5ILCS 140/7(1)(C); 5 ILCS 140/11(f). Again, Section 7(1)(n) *per se* exempts CR files; thus, Defendants

13

do not have the burden of proving that an objectively reasonable person would find the disclosure of CRs an invasion of privacy. The law is clear that where records fall within one of the specifically enumerated exemptions of FOIA, "no further inquiry" is necessary. *Lieber v. Bd. of Trustees of S. Illinois Univ.,* 176 Ill.2d 401, 407-08 (1997).

Further, good cause has been established by Defendants because the newly amended FOIA's list of exemptions now include an express exemption protecting disciplinary records from public disclosure until they are sustained. Many of the complaints made against police officers are merit less, and such disclosure would invade the police officers' privacy rights, make police officers targets of baseless lawsuits and undermine the trust in the police. Again, Defendants are not moving to "non-disclose" anything to plaintiffs. Defendants simply seek a protective order protecting against improper dissemination of such materials to third parties without review. Defendants have satisfied their burden for such a protective order.

    F.    **State Law Can Be Relied Upon in a Federal Rule 26(C) Analysis.**

Plaintiff argues that Defendants' citation to state law is misplaced. (Plaintiff's Response, p. 12). Again, Defendants disagree. FOIA is a statute to be considered by this Court in analyzing the privacy interest in CR files. Federal courts have looked to and relied on state law as a guideline in deciding discovery issues in federal lawsuits. *See Padilla v. City of Chicago,* No. 06 C 5462, Document #315, p.6 (Judge Shadur, N.D. Ill) and *Diamond Ventures LLC v. Barreto,* 452 F.3d 892, 897 n.7 (D.C. 2006) (citing *Med. Records*, 381 F.3d 1205 (D.C. 2004)) ("In determining which interests to weigh in the Rule 26 balance, courts look to statutory confidentiality provisions, even if they do not create enforceable privileges."). C.R. files now fall under Section 7(1)(n) exemption *per se* exempting:

14

n) Records relating to a public body's adjudication of employee grievances or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed.

5 ILCS 140/7(1)(n).

### G. Defendants will Remove the Reference to *Bond v. Utreras* From the Protective Order.

Defendants have no objection to removing the reference to *Bond v. Utreras* from the Protective Order.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that plaintiff's objections to Defendants' proposed protective order be overruled. In the instant litigation, Plaintiff is not prejudiced in any way by entry of the proposed protective order. In fact, entry of a protective order will likely serve to minimize discovery disputes and actually facilitate discovery, as the parties will more readily disclose documents knowing that they will only be used for purposes of the instant litigation.

Respectfully submitted,
*Mary S. McDonald*
Mary S. McDonald
Assistant Corporation Counsel
30 N. LaSalle St. #900
Chicago, IL 60602
(312)-744-8307
Atty No: 06199995