**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **PEDRO RANGEL, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No: 10 C 2750** |
| | ) | |
| **CITY OF CHICAGO, et al.,** | ) | **Judge Joan H. Lefkow** |
| | ) | |
| Defendants. | ) | |

**DECISION AND ORDER**

Defendants, the City of Chicago and individual police officers, have moved for entry of a protective order sheltering as confidential personnel records, disciplinary histories, complaint register entries ("CRs"), and similar records of police officers and other Chicago Police Department personnel, as well as non-parties who may become witnesses in the case. They also seek protection of medical records consistently with rules promulgated under the Health Insurance Portability and Accountability Act, codified primarily at 18, 26, & 42 U.S.C. and the Standards for Privacy of Individually Identifiable Health Information, 45 C.F.R. § 160 *et seq*., 45 C.F.R. § 164, *et seq*. The proposed order is not disputed as to the medical records. The parties also seem to agree that particular identifying information such as Social Security numbers and financial information may be treated as confidential. Plaintiffs, however, contend that the personnel and disciplinary materials are not confidential and the proposed order's procedures for lifting the protective order are unduly burdensome, expensive, and inappropriate under Seventh

Circuit law. At the heart of this dispute is whether materials relating to citizen complaints against and disciplinary histories of the defendant officers should be treated as confidential matter.[1]

Rule 26(c) of the Federal Rules of Civil Procedure permits the district court "for good cause, [to] issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." "Absent a protective order, parties to a law suit may disseminate materials obtained during discovery as they see fit." *Jepson, Inc*. v. *Makita Elec. Works, Ltd.,* 30 F.3d 854, 858 (7th Cir. 1994). In deciding whether good cause exists, the district court must balance the interests of the parties, taking into account the harm to the party seeking the protective order and the importance of the disclosure to the nonmoving party. *Wiggins* v. *Burge,* 173 F.R.D. 226, 229 (N.D.Ill.1997). When making a good cause determination, a district court may consider "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public official." *Id.*

---

[1]The proposed order provides that "Confidential Matter" includes "employment, disciplinary, financial, medical or other information that is of a sensitive or non-public nature" regarding the parties, City employees, and potential witnesses. It includes CR files where no discipline has been imposed, material protected from disclosure by the Illinois Personnel Records Review Act and the Illinois Freedom of Information Act, as well as personal and family information of police officers and their families. A party challenging a confidential designation has the burden to obtain an order of court lifting the order.

CR files which are pending, where an affidavit in support of the complaint has been made, and where discipline has been imposed, are not considered Confidential Matters but shall be released only in a prescribed manner. The process places the burden on the discovering party to apply to the court for a determination to lift or modify the designation. The discovering party must give 30 days notice to the producing party before information may be released publicly, to permit the producing party to determine whether the document contains confidential information. In case of unresolved dispute, the court must make an *in camera* inspection before a document may be released.

At the end of the litigation, the parties are required to return all confidential materials, including copies thereof, to the producing party and all such information shall remain permanently confidential.

App. to Motion, Dkt. No. 28-2.

As this court has stated in *Bond* v. *Utreras*, No. 04 C 2617, 2007 WL 2003085, at *2 (N.D.Ill. July 2, 2007), *rev'd on other grounds*, 585 F.3d 1061 (7th Cir. 2009),

> "It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public." *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775 (1st Cir.1988). Indeed, "[u]nless the public has a presumptive right of access to discovery materials, the party seeking to protect the materials would have no need for a judicial order since the public would not be allowed to examine the materials in any event." *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 145-46 (2nd Cir.1987). . . . [A]s a general proposition, pretrial discovery must take place in the public unless compelling reasons exist for denying the public access to the proceedings." *Am. Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir.1979).

(footnotes omitted).

The court of appeals more recently has cast doubt on these principles, however, apparently as a result of amendment to Rule 5 of the Federal Rules of Civil Procedure. The rule was amended in 1980 to permit a district court to order that discovery materials not be filed because of "serious problems of storage in some districts." Fed. R. Civ. P. 5, Advisory Committee Notes, 1980 amendment. It retained the default requirement of filing, however, because "such materials are sometimes of interest to those who may have no access to them except by a requirement of filing, such as members of a class, litigants similarly situated, or the public generally." *Id.* An amendment made in 2000 abrogated the variety of local rules and generally prohibited the filing of discovery materials until they are used in the proceeding. Fed. R. Civ. P. 5(d)(1); *see also* Advisory Committee Notes, 2000 amendment.

In *Bond*, 585 F.3d at 1068 n.4, the court stated, "To the extent, however, that [cited] cases are premised upon a principle that pre-trial discovery must take place in . . . public unless compelling reasons exist for denying the public access to the proceedings, they have been superseded by the 2000 amendment to Rule 5 of the *Federal Rules of Civil Procedure*." (internal

citations and quotation marks omitted). Other dicta seem to assume that parties may conduct discovery in private. For example, in *Citizens First Nat'l Bank of Princeton* v. *Cincinnati Ins. Co.*,178 F.3d 943, 944 (7th Cir.1999), the court commented, "It is true that pretrial discovery, unlike the trial itself, is usually conducted in private." *See also Grove Fresh Distribs., Inc.* v. *Everfresh Juice Co.*, 24 F.3d 893, 897-98 (7th Cir. 1994) ("[U]ntil admitted into the record, material uncovered during pretrial discovery is ordinarily not within the scope of press access."); *Bond*, 585 F.3d at 1066 ("Unfiled discovery is private, not public.").

The court has found no cases directly construing Rule 5(d)(1). But the Advisory Committee Notes, cited above, give no indication that the changes in the rule were intended to make private that which had previously been public. While the correct rule of law awaits definition, the court will evaluate good cause for entry and scope of a protective order under the good cause factors set out above but in light of the signals from the court of appeals pointing towards limitation of access to discovery materials.

In their motion, defendants rely solely on Illinois law as grounds for the protective order, seeming to assume that good cause is found in the Illinois Personnel Record Review Act, 820 Ill. Comp. Stat. § 40/0.01, and a recent amendment to the Illinois Freedom of Information Act (IFOIA), codified at Ill. Comp. Stat. § 140/7(1)(n) (West 2010). Only in reply do they address the good cause requirement of Rule 26(c). Of course, Illinois law, while it may be a guide to the nature of the public's interest, is not applicable to discovery in this court. *See Murphy* v. *Schering Corp*., 878 F. Supp.124, 126 (N.D.Ill.1995) ("*Erie v. Tompkins* principles teach that Illinois law provides the *substantive* rules of decision in this diversity action, but that does not extend to Illinois' *procedural* rules (see the seminal decision in *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965)).").

But even if it were applicable, Illinois law does not authorize the scope of confidentiality defendants seek. The Personnel Record Review Act is directed at personnel files only (not CR register documents), and it excludes from its prohibited disclosures disciplinary actions "ordered to a party in a legal action." 820 Ill. Comp. Stat. § 40/7(3)(b). IFOIA exempts from disclosure without consent personal information contained within public records "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," while providing that "[t]he disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." 5 Ill. Comp. Stat. 140/7(1)(c) (West 2010). The Illinois Appellate Court has ruled that IFOIA does not prohibit disclosure of records of citizen complaints against a sheriff's deputy. *Gekas* v. *Williamson*, 912 N.E.2d 347, 358, 393 Ill. App.3d 573, 586, 332 Ill. Dec. 161, 172 (2009) ("Complaints, founded or unfounded, that [the deputy] committed misconduct in his capacity as a deputy sheriff are 'information that bears on [his] public duties,'[2] and the disclosure of such information 'shall not be considered an invasion of personal privacy.' 5 ILCS 140/7(1)(b).").

A post-*Gekas* amendment to IFOIA, codified at 5 Ill. Comp. Stat 140/7(1)(n) (West 2010), does not, as defendants argue, materially change the exemption related to disciplinary records so as to justify the protective order requested here. The earlier version of the

---

[2]The court is quoting 5 Ill. Comp. Stat. § 140/7(1)(b) (West 2009). This provision has been amended (codified at 5 Ill. Comp. Stat. § 140/7(1)(c) (West 2010)). The section of the statute, as amended, states: "Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. . . . The disclosure of information that bears on the public duties of public employees and officials shall not be considered an invasion of personal privacy." The amendments do not affect this court's analysis.

adjudications exemption applied, as relevant here, to "[i]nformation concerning a public body's adjudication of student or employee grievance or disciplinary cases, except for the final outcome of the cases." 5 Ill. Comp. Stat. § 140/7(1)(u) (West 2009). The amended text, nearly identical, exempts "[r]ecords relating to a public body's adjudication of employee grievance or disciplinary cases; however, this exemption shall not extend to the final outcome of cases in which discipline is imposed." 5 Ill. Comp. Stat. § 140/7(1)(n) (West 2010). In the first place, employee grievances and discipline is likely related to union and personnel disciplinary procedures. *See Our Opinion: Don't weaken revised FOIA*, THE STATE JOURNAL-REGISTER, Apr. 27, 2010, http://www.sj-r.com/editorials/x43873749/Our-Opinion-Don-t-weaken-revised-FOIA. In any event, there is no basis to conclude that this amendment, enacted approximately one month after *Gekas* was decided, was an effort to broaden the scope of the adjudication exemption for public employees, and certainly not to exempt CR register documents. *See Fuller* v. *City of Chicago*, No. 09 C 1672, Minute Order, 2009 U.S. Dist. LEXIS 125727 at *2 (N.D. Ill. Nov. 20, 2009) ("[The] amendments do not materially change the provision regarding disciplinary proceedings that was in effect at the time of the *Geka*s ruling."); *but see Alva* v. *City of Chicago*, No. 08 C 6261, Slip. Op. (N.D. Ill. Apr. 16, 2010) (after 2010 amendment, CR reports are exempt from disclosure under IFOIA justifying protective order designating them as confidential); *Bell* v. *City of Chicago*, No. 09 C 0754, 2010 WL 753297 (N.D. Ill. Feb. 26, 2010) ("This amendment is material, because the City no longer needs to argue that a CR is a personal and private part of an officer's personnel file to fit within the FOIA's exemptions"). Quite to the contrary, according to an article in the STATE JOURNAL-REGISTER, the amendments, which were proposed by Attorney

General Lisa Madigan's office, were intended to remove loopholes that had been exploited by government officials.[3]

[3] That paper reported:

> A new rewrite of the state's Freedom of Information Act includes of mix of strengthening pushed by open-records advocates, with some scaled-back changes backed by lawmakers.
>
> Attorney General Lisa Madigan's office has been pushing this spring to rewrite the law, after repeated abuses by ex-Gov. Rod Blagojevich's administration and other governmental bodies. Lawmakers took her original rewrite and watered it down last week, prompting fears that the current law would actually be better than what lawmakers wanted.
>
> But Madigan's latest bill – filed today as part of Senate Bill 189 – seeks to strike a balance between the two sides. Cara Smith, Madigan's deputy chief of staff, said she sees this latest version as a final proposal for lawmakers to consider in the waning days of the legislative session.
>
> This plan would strip criminal penalties for public officials who won't release records but would allow for civil fines of between $2,500 and $5,000 for violators.
>
> Home addresses, license plate numbers and telephone numbers would be among the information public officials could still keep secret. Arrest reports must be made public under the new plan, as would certain criminal record information.
>
> Documents must also be provided in electronic format "if feasible" under the new rewrite.

Ryan Keith, *Attorney general releases new FOIA rewrite*, THE STATE JOURNAL-REGISTER, May 27, 2009, http://www.sj-r.com/breaking/x124601484/Attorney-general-releases-new-FOIA-rewrite.

Returning to the real issue, whether defendants have demonstrated good cause for confidentiality of CR files, the court concludes that good cause is apparent only for private information appearing in the documents.

Private information. The officers as well as complainants in CR files have a privacy interest in the contents of their personnel files and CR register documents that do not relate to their official duties. The information is presumably irrelevant to any matter before the court, in any event. The definition of private information in IFOIA, 5 Ill. Comp. Stat. § 140/2(c-5) (West 2010), is a reasonable guide to the zone of privacy:

> "Private information" means unique identifiers, including a person's social security number, driver's license number, employee identification number, biometric identifiers, personal financial information, passwords or other access codes, medical records, home or personal telephone numbers, and personal email addresses. Private information also includes home address and personal license plates, except as otherwise provided by law or when compiled without possibility of attribution to any person.

Any disclosure of private information shall require a motion to lift the protective order for good cause shown.

Information in CR complaints. These documents implicate the privacy interests of complainant private citizens as well as the complained-of officers. The complainant citizens are not parties here and are unaware of this motion. One may assume that some would prefer their names be protected from disclosure, although the City has not indicated that citizens are assured of confidentiality when they make a complaint. If complainants are not so advised, there is no good cause to treat names as confidential.

With respect to the officers, good cause does not exist to protect information contained in CR complaints beyond the private information, as defined above, whether the matter is

adjudicated or unadjudicated. The officers understandably prefer not to have disciplinary history and citizen complaints made potentially available outside the police department. Nevertheless, police officers are public employees, paid by the taxpayers. The public's interest in transparency outweighs the officers' privacy interest. As this court expressed in *Bond*, 2007 WL 2003085 *3,

> Information [contained in CR complaints and disciplinary histories], though personal, has a distinct public character, as it relates to the defendant officers' performance of their official duties. Without such information, the public would be unable to supervise the individuals and institutions it has entrusted with the extraordinary authority to arrest and detain persons against their will. With so much at stake, defendants simply cannot be permitted to operate in secrecy.[4]

Numerous decisions in this district have similarly concluded that the public interest in access to such information outweighs the officers' interest in avoiding disclosure. *See, e.g., Padilla* v. *City of Chicago*, 669 F. Supp. 2d 911 (N.D. Ill. 2009); *Fuller*, No. 09 C 1672, Minute Order, 2009 U.S. Dist. LEXIS 125727; *Goldhamer* v. *Nagode*, No. 07 C 5836, 2009 WL 3680201 (N.D. Ill. Nov. 2, 2009); *McGee* v. *City of Chicago*, No. 04 C 6352, 2005 WL 3215558 (N.D. Ill. June 23, 2005); *Wiggins*, 173 F.R.D. at 230. At the same time, because there is no presently demonstrated need to use or disclose such information for purposes other than this litigation, the court will require, should an occasion arise in which plaintiffs's counsel intend to disclose CR information to a person not involved with this litigation, that 7 days' notice be given to the officer to permit him or her to demonstrate by way of motion for a protective order a compelling reason for protection, such as danger to oneself or a member of one's family.

---

[4]*Bond* v. *Utreras*, 583 F.3d 1061 (7th Cir. 2009), does not hold to the contrary. *Bond* reversed this court's lifting of a protective order to permit an intervenor journalist access to CR reports. As indicated above, the court of appeals did not address the good cause requirement. It ruled that a permissive intervenor had no "standing to challenge a protective order after the case has been dismissed." *Id.* at 1071 ("[W]e . . . set to one side the question whether a permissive intervenor must establish standing to challenge a protective order in an ongoing case.").

**ORDER**

The motion for protective order is granted in part and denied in part. The parties shall submit a draft protective order, agreed to in form, consistent with this ruling.

Dated: September 13, 2010

Joan H. Lefkow
United States District Judge